IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| In re: ) | |
| ) | |
| Woodlawn Gardens, LLC, ) | Case No.: 05-04731-BGC-11 |
| ) | |
| Debtor. ) | |
| ) | |

**ORDER
FINDING PROPERTY NOT PROPERTY OF THE ESTATE AND
GRANTING RELIEF FROM THE STAY**

### I. Background

The debtor Woodlawn Gardens, LLC, operates an apartment complex in Birmingham, Alabama. The City of Birmingham financed the purchase and renovation of that property. When Woodlawn Gardens, LLC, failed to make any payments under the parties' financial arrangements, and when Woodlawn Gardens transferred the property to another entity, Prayer Tower, LLC, the City foreclosed on the property. When Woodlawn Gardens, LLC, and Prayer Tower, LLC, failed to move from the property, the City attempted to have them ejected. After a hearing on a complaint for an accounting, and other relief, the state court entered a temporary restraining order. Included in that order, the state court awarded the property to the City, appointed an independent property manager for the property, and required the debtor to vacate the premises. Before a scheduled request for a preliminary injunction could be heard, Woodlawn Gardens, LLC, filed the pending Chapter 11 case.[1]

The principal matters before the Court are:

1. The <u>Motion of City of Birmingham to Dismiss, or in the Alternative, for Relief From the Automatic Stay</u> filed by the movant, City of Birmingham, on May 13, 2005;

2. The <u>Motion of City of Birmingham for Emergency Hearing on its Motion for an Order Deeming Certain Property to be Excluded From Debtor's Estate and Additionally or Alternatively, for Relief From the Automatic Stay</u> filed by the movant, City of Birmingham, on May 17, 2005.

---

[1]In its petition, Woodlawn Gardens lists Woodlawn Gardens, LLC, and Prayer Tower, LLC, as joint debtors. The joint debtor condition is discussed below.

After notice, a trial was held on June 9, 2005.[2] Appearing were:

1.  Mr. Matthew W. Grill, Mr. Brian Walding, and Mr. Casey Grace, attorneys for the City of Birmingham; and Mr. Ken Knox, a representative of the City; and

2.  Mr. Brian Bugge and Mr. George Babakitis, the attorneys for the debtor; and Mr. Phillip Ronald Agee and the Rev. Hosea Agee, officers and representatives of Woodlawn Gardens, LLC, and Prayer Tower, LLC.

All matters were submitted on the testimony of Mr. Knox, Mr. Agee, and Rev. Agee; exhibits; the record in this case; and arguments of counsel.[3]

---

[2]Two previous hearings have been held before this Court and two prior Orders have been entered. After a hearing on May 18, 2005, this Court entered an Order on May 18, 2005, memorializing the parties' agreement that the essential conditions of the state court's temporary restraining order would remain in effect. After a second hearing on May 25, 2005, this Court entered an Order on May 26, 2005. That Order again caused the state court's temporary restraining order conditions to remain in effect. As this Order states, the May 26, 2005, order shall remain in effect until changed by the state court.

[3]Eight additional matters were set before the Court on the morning of the trial.

Two matters were motions of the City to expedite consideration of its requests. Those were:

1.  A Motion of City of Birmingham for Expedited Hearing on Its Motion to Dismiss, or in the Alternative, for Relief From the Automatic Stay filed May 13, 2005; and

2.  An Emergency Motion of City of Birmingham for an Order Deeming Certain Property to be Excluded From Debtor's Estate and Additionally or Alternatively, for Relief From the Automatic Stay filed May 17, 2005.

Both motions are due to be granted.

Three matters were show cause matters instituted by the Court on May 26, 2005. Those were:

1.  Show Cause Why this Case Should Not be Dismissed because the Debtor/Corporation is not Represented by a Licensed Attorney. See Palazzo v. Gulf Oil Corp., 764 F.2d 1381 (11th Cir. 1985). This matter was resolved when licensed attorneys made appearances for the debtor. This matter is moot;

2.  Show Cause Why Woodlawn Gardens, LLC, and/or Prayer Tower, LLC, Should Not be Dismissed under Section 302(a) of the Bankruptcy Code Because Corporations Cannot be Joint Debtors. This matter is discussed in detail in this Order. It too is moot, as to dismissal;

## II. Contentions and Summary of Holdings

The City of Birmingham contends that the apartment property is not part of the debtor's bankruptcy estate and that relief from the stay should be granted to allow the City to continue with its state court proceedings.

Woodlawn Gardens, LLC, contends, notwithstanding the foreclosure, that it continues to own the property and that this Court should allow it to reorganize under the Bankruptcy Code and pay the City for the property.

As discussed below, the Court agrees with the City that: (1) the property which is the subject of the pending motions is not property of the debtor's bankruptcy estate; (2) the property belongs to the City; and (3) the City is entitled to relief from the stay to continue a state court lawsuit pending against the debtor. The Court does not agree that the pending Chapter 11 case should be dismissed.

## III. Findings of Fact

### A. Loans from the City of Birmingham

On February 13, 2003, the City of Birmingham made two loans to Woodlawn Gardens, LLC, an Alabama limited liability company. City's Exhibit A and City's Exhibit B. One loan was made for $5,496,455.66. A smaller loan was made for $398,429.69. Each was made to allow Woodlawn Gardens, LLC, to acquire and to rehabilitate an apartment complex known as the Woodlawn Gardens Project. The loans were also made to allow Woodlawn Gardens to refinance several small outstanding debts.

---

3. <u>Show Cause Why this Case Should Not be Dismissed for Failure to File Proper Schedules</u>. This matter will be addressed by a separate order.

Two matters were filed by Rev. Agee on behalf of the debtor. Those were:

1. <u>Motion for Delay</u> filed May 25, 2005. This matter was granted by the Court's order entered May 26, 2005, and the debtor was allowed two additional weeks to retain an attorney;

2. <u>Motion to Set Aside</u> filed May 25, 2005. The debtor asks the Court to set aside portions of a state court order because an attorney that is alleged to have represented Rev Agee previously and is not employed by the City. This matter is outside the jurisdiction of this Court and the motion is due to be denied.

A final item was filed on June 8, 2005, shortly before the trial. It was the debtor's <u>Notice of Appearance and Debtor's Objections to the Pending Motions as Filed by the City of Birmingham</u>. As to the debtor's objections, they are due to be overruled.

3

To secure payment of the loans, an individual named Milton J. Domit, acting as the "Initial Member of Woodlawn Gardens, LLC," executed two promissory notes on February 13, 2003. City's Exhibit A. The larger note required repayment of the principal amount, plus 3.5% interest per year, in monthly installments of $33,038.72. It was payable on the first day of each month. The first payment became due on September 1, 2003. The smaller note required repayment of the principal amount, plus 3.5% interest per year, in monthly installments of $2,394.93. It was also payable on the first day of each month and its first payment also became due on September 1, 2003.

The notes were secured by two separate mortgages on the apartment complex and related property. City's Exhibit B. Each mortgage expressly included and encumbered not only the real property and appurtenant structures, but also included and encumbered all apartment leases, rents, and personal property located on the realty.

The mortgages were also executed by Milton J. Domit, as the "Initial Member of Woodlawn Gardens, LLC," on February 13, 2003. Both mortgages were recorded on March 6, 2003, in the appropriate county probate office.

## B. Default Under the Notes and Mortgages

Under the terms of the mortgages, either: (1) the sale, transfer, or conveyance of the property; or (2) the failure to make any payment due under the notes, would constitute a default. Both have occurred.

First, without the permission of the City, on September 4, 2003, Woodlawn Gardens, LLC, transferred the property by quitclaim deed to Prayer Tower, LLC. City's Exhibit C. The quitclaim deed was executed by Mr. Domit. A contract between Mr. Domit and Rev. Agee effected the transfer.[4] City's Exhibit C.

Second, neither Woodlawn Gardens, LLC, nor Prayer Tower, LLC, has ever made any of the payments due under either note.[5]

---

[4] Mr. Domit was referred to in the deed as the, "sole member of Woodlawn Gardens, LLC,...." City's Exhibit C. Rev. Agee was described in the contract as the "sole member" of Prayer Tower, LLC. City's Exhibit C.

[5] Rev. Agee testified that on one occasion the City refused to accept a $25,000 payment. The evidence demonstrates that the payment referred to was tendered after default and for an amount less that the required payment. Consequently, the City was not required to accept less than it was owed at the time, which at the time was about $74,000. And, of course, if it did accept the lesser amount, that acceptance could have been construed as a waiver as to its right to receive timely subsequent payments in full.

4

Consequently, the failure of Woodlawn Gardens, LLC, or Prayer Tower, LLC, to make the payments required under the two notes, and Woodlawn's transfer of the property to Prayer Tower, constituted defaults under the terms of the mortgages.

### C. Foreclosure of the Mortgages

In response to the defaults, the City elected: (1) to accelerate the two notes; (2) to declare the amounts due immediately due and payable; (3) to institute foreclosure proceedings; and (4) to terminate Woodlawn Gardens, LLC's right to collect rents from tenants residing in the property. By a letter dated January 9, 2004, the City's attorneys notified Woodlawn Gardens, LLC, and Prayer Tower, LLC, of its intentions. City's Exhibit D.

The City scheduled a foreclosure sale for February 11, 2004, to occur in front of the Jefferson County, Alabama courthouse during the legal hours of sale. Notice of the sale was advertised in the Alabama Messenger, a newspaper of general circulation published in Jefferson County, Alabama, the county in which the property is located. That notice was published once a week for three consecutive weeks. City's Exhibit E. Specifically, notice was published on January 24, 2004, January 31, 2004, and on February 7, 2004. Id.

The foreclosure sale occurred on February 11, 2004, as advertised.[6] The City purchased the property with a credit bid of $4,000,000, the highest and best bid for the property. On the same day, as mortgagee, the City executed a <u>Mortgage Foreclosure Deed</u> transferring the property to itself, as purchaser. City's Exhibit F. That deed was recorded in the office of the probate judge for Jefferson County, Alabama, on February 11, 2004.

### D. Failure to Relinquish Possession of the Property and Failure to Remit Collected Rents

Also on February 11, 2004, the City's attorneys mailed a letter to Woodlawn Gardens, LLC, and Prayer Tower, LLC, demanding that the LLCs relinquish possession of the property within 10 days of receipt of the letter.[7] City's Exhibit G.[8] In addition, the letter instructed Woodlawn Gardens, LLC, and Prayer Tower, LLC, that they were not authorized to collect rents from the property's tenants and demanded that the LLCs remit any such rents.

---

[6]There is no evidence to contradict the validity of the foreclosure.

[7]Under Alabama law, a mortgagee may demand possession of property after foreclosure and if the mortgagor does not relinquish the property, the mortgagor may lose its statutory right of redemption. See Code of Ala. 1975, § 6-5-251.

[8]There is no evidence to contradict the validity of the City's 10-day notice to the debtor.

5

Notwithstanding the City's demand, neither Woodlawn Gardens, LLC, nor Prayer Tower, LLC, tendered possession of the property to the City.[9]  Similarly, although rents were collected from the tenants living in the apartment complex, neither LLC remitted those rents to the City.

### E.  Complaint to Recover the Property and Rents

To obtain possession of the property and to recover rents which had been collected from the tenants, the City filed suit against Woodlawn Gardens, LLC, and Prayer Tower, LLC, in state court on April 15, 2005.  City's Exhibit H.

In its <u>Verified Complaint for Temporary Restraining Order, Preliminary and Permanent Injunction and Appointment of Receiver</u>, the City sought: (1) a judgment for the amounts owed under the two notes; (2) possession of the apartment complex; (3) an order compelling the defendants to account for rents collected after January 9, 2004; (4) an order restraining the defendants from collecting rents from the tenants living in the complex; (5) an order compelling the defendants to hold, for the City, any rents which they have already collected; (6) an order enjoining the defendants from using or disposing of any part of the City's property; and (7) the appointment of a receiver to take possession and control of the complex and to collect the rents.  City's Exhibit H.

On April 22, 2005, the City filed a <u>Motion for Temporary Restraining Order, Preliminary Injunction and Appointment of Receiver</u> in the state court case.  City's Exhibit I.

A hearing on the <u>Motion for Temporary Restraining Order, Preliminary Injunction and Appointment of Receiver</u> was held on May 4, 2005.  After the hearing, the state court issued a temporary restraining order which: (1) awarded possession and control of the property to the City pending an evidentiary hearing; (2) appointed Alvin Johnson of Johnson Realty Company as receiver of the property and directed him to take immediate possession and control of the property; (3) restrained Woodlawn Gardens, LLC, and Prayer Tower, LLC from possessing or controlling the property, and from collecting any rents or otherwise engaging in any active property management; (4) and ordered Woodlawn Gardens, LLC, and Prayer Tower, LLC to provide an accounting to the court of all financial transactions relating to their management of the property, including rents collected.  City's Exhibit J.

In the same order, a <u>hearing on a preliminary injunction was scheduled for 1:00 p.m. on May 13, 2005</u>.  That hearing was not held because, as discussed below,

---

[9] There is no evidence to contradict the evidence that the debtor did not give up the property after the City's demand for possession.

Woodlawn Gardens, LLC, filed the pending Chapter 11 bankruptcy petition prior to the hearing.[10]

### F. Chapter 11 Bankruptcy Petition

At 9:36 a.m. on May 13, 2005, Woodlawn Gardens, LLC, filed a handwritten, skeletal, pro se petition for relief under Chapter 11 of the Bankruptcy Code. The petition is signed by "Phillip Randall Agee." Under his signature, in the space provided for specifying the title of the authorized person signing for a corporation, the abbreviation "CEO" is written.

The petition was not accompanied by any schedules, or statement of affairs, or list of creditors, as required by section 521(1) of the Bankruptcy Code. 11 U.S.C. § 521(1). The petition did not include a corporate ownership statement, as required by Bankruptcy Rule 1007(a)(1). Fed.R.Bankr.P. 1007(a)(1). And it did not include a list of 20 largest creditors, as required by Bankruptcy Rule 1007(d). Fed.R.Bankr.P. 1007(d). Woodlawn Gardens, LLC, has since filed some of that material.

As mentioned above, in its filing, Woodlawn Gardens, LLC, purported to include Prayer Tower, LLC, as a joint debtor. The words "Prayer Tower, LLC" are handwritten in the space provided on Official Form B1 entitled "Name of Joint Debtor (Spouse) (Last, First, Middle)," and Rev. Hosea Agee's signature appears on the line provided on the second page of the form for the signature of a joint debtor. Again, no schedules, or statement of affairs, or list of creditors, corporate ownership statement, or list of 20 largest creditors, were filed for the "joint debtor." Prayer Tower, LLC, has yet to file any of those documents.[11]

### IV. Conclusions of Law

The City seeks: (A) a declaration that the apartment complex and associated property, such as leases and rents, are not property of any bankruptcy estate; (B) relief from the stay to continue the prosecution of its state court action; and (C) an order dismissing the pending case.

---

[10] At the hearing before this Court, the debtor took the interesting position that the state court's temporary restraining order expired by operation of law and that there were no continuing restraints on the debtor. If that order did expire as a matter of law, as the debtor contends, it did so only because the state court was prohibited by the automatic stay from reaching a different resolution before the order expired.

[11] Unrelated to these failures, as discussed below, this Court finds that Prayer Tower, LLC, is not a debtor.

7

## A. Property of the Estate

Property of a bankruptcy estate is defined by section 541 of the Bankruptcy Code. That section explains that the property of an estate includes, "all legal and equitable interests of the debtor in the property **as of the commencement of the case**." 11 U.S.C. § 541(a)(1) (emphasis added). As discussed below, the apartment complex and all things associated with it, such as leases and rents, were not property of the bankruptcy estate of either Woodlawn Gardens LLC, or Prayer Tower LLC, at the commencement of the case and therefore that property was not then, and is not now, property of either estate. The Court first considers the estate of Woodlawn Gardens, LLC.

### 1. Woodlawn Gardens LLC

As discussed below, there are at least three reasons why the apartment complex and all things associated with it, such as leases and rents, are not property of the bankruptcy estate of Woodlawn Gardens, LLC. Those are: (a) Woodlawn Gardens, LLC, transferred whatever interests it had in the property to Prayer Tower LLC; (b) even if all interests were not transferred, Woodlawn Gardens lost its statutory right to redeem the property after the City's foreclosure when it did not vacate the property after possession was demanded; and (c) even if Woodlawn Gardens did not lose its right to redeem, it did not exercise its right within the one-year period for redemption in Alabama. Each reason is discussed below.

#### a. All of Woodlawn Gardens' Interests Were Transferred to Prayer Tower

By its own admission, Woodlawn Gardens, LLC, transferred whatever interest it had in the property to Prayer Tower, LLC, by quitclaim deed on September 4, 2003. As such, when it filed its bankruptcy petition February 13, 2005, it did not have any legal or equitable interest in the property. Consequently, that property could not have, as a matter of law, become property of the bankruptcy estate of Woodlawn Gardens, LLC.

#### b. Woodlawn Gardens Had Already Lost Its Right of Redemption When it Filed Bankruptcy

The Court of Appeals for the Eleventh Circuit instructs that, "The property rights of a debtor in a bankruptcy estate are defined by state law." Commercial Fed. Mortgage Corp. v. Smith (In re Smith), 85 F.3d 1555, 1558 (11th Cir.1996). Writing for the Court, Circuit Judge Stanley F. Birch, Jr. explained the applicable Alabama law. He wrote:

> In Alabama, a mortgagee holds legal title to the real property subject to the mortgagor's equitable right of redemption. Ala. Code § 35-10-26

(1993). Alabama foreclosure law provides that, upon a foreclosure sale, a mortgagor's equitable right of redemption ends. FDIC v. Morrison, 747 F.2d 610, 613 (11th Cir.1984), cert. denied, 474 U.S. 1019, 106 S.Ct. 568, 88 L.Ed.2d 553 (1985). "[F]oreclosure of a mortgage extinguishes the debt to the amount of the purchase price, if that amount is less than the debt, or extinguishes the entire debt if the purchase price is more than that amount." Davis v. Huntsville Prod. Credit Ass'n, 481 So.2d 1103, 1105 (Ala.1985). **The purchaser at the foreclosure sale then holds legal title to the property, subject to the mortgagor's one year statutory right of redemption**. Ala. Code § 6-5-248(a) & (b).

Id. at 1558-59 (emphasis added).

Section 6-5-251 of the Alabama Code explains what requirements a mortgagor must meet in order to retain that right of redemption. Section 6-5-251 reads in pertinent part:

(a) The possession of the land must be delivered to the purchaser or purchaser's transferees by the debtor or mortgagor if in their possession or in the possession of anyone holding under them by privity of title, within 10 days after written demand for the possession has been made by, or on behalf of, the purchasers or purchaser's transferees.

*********

(c) Failure of the debtor or mortgagor or anyone holding possession under him or her to comply with the provisions of this section forfeits the right of redemption of the debtor or one holding possession under the debtor.

Code of Ala. 1975, § 6-5-251.

Based on the above, this Court must find that under Alabama law, even if Woodlawn Gardens, LLC, had not transferred its interest in the property to Prayer Tower, LLC, when the foreclosure sale was completed on February 11, 2004, the only interest Woodlawn retained was bare statutory right of redemption.[12] And when it failed to vacate the property within 10 days after being served with written demand to vacate by the City, under section 6-5-251, it lost even that right.

---

[12]A right of redemption may become property of a bankruptcy estate if that right existed at the time the bankruptcy was filed. In re Smith at 1558. However, If the right has expired before the bankruptcy is filed, as it did in this case, there is no longer a right to become part of the estate.

9

Consequently, even if Woodlawn Gardens LLC, did not transfer all of its interests to Prayer Tower LLC, at the time it filed bankruptcy it did not have any remaining interest in the property.

### c. Woodlawn Gardens, LLC, Never Redeemed the Property

And finally, even if Woodlawn Gardens, LLC, had not transferred its interest in the property to Prayer Tower, LLC, <u>and</u> had not lost its right of redemption because it failed to vacate, its right to redeem expired on February 11, 2005, one year after the foreclosure sale. Under Alabama law, redemption from a mortgage foreclosure sale must occur within one year from the date that the sale was completed. Section 6-5-248(b) of the Alabama Code reads, "All persons... [who are eligible to redeem property] may exercise the right of redemption granted by this article within one year from the date of the sale." Code of Ala., 1975, § 6-5-248(b) (parenthetical added). Woodlawn Gardens did not redeem the property within its one year period.

Consequently, even if Woodlawn Gardens LLC, did not transfer its interest in the property or did not lose its right of redemption, because it had not redeemed its right of redemption within a year from the date of the foreclosure, it did not have any interest in the property when it filed its bankruptcy on May 13, 2005.

The Court next considers the "estate" of Prayer Tower, LLC.

### 2. Prayer Tower LLC

Like Woodlawn Gardens, LLC, the apartment complex and all things associated with it, such as leases and rents, are not property of Prayer Tower, LLC's bankruptcy estate. Again, there are at least two reasons.

### a. Prayer Tower, LLC, is Not a Debtor

First of all, Prayer Tower, LLC, does not have a bankruptcy estate because it does not have a bankruptcy case. The explanation is simple and straightforward. The instant case was filed by Woodlawn Gardens, LLC, not Prayer Tower, LLC. Prayer Tower, LLC, is designated on the petition only as a **"joint debtor"** of Woodlawn Gardens, LLC.

Section 302(a) of the Bankruptcy Code reads, "A joint case under a chapter of this title is commenced by the filing with the bankruptcy court of a single petition under such chapter by an individual that may be a debtor under such chapter and such individual's spouse." 11 U.S.C. § 302(a). That section was interpreted in <u>In re Korangy</u>, 1989 WL 34317, Adversary Proceeding No. 87-0377 (Bkrtcy. D. Md. March 30, 1989) as permitting, "only an individual and their spouse to be joint debtors. Individuals and a partnership or a corporation cannot be joint debtors." <u>Id</u>. at *4. This Court agrees.

10

Consequently, Woodlawn Gardens, LLC's attempt to include Prayer Tower, LLC, in a joint case was void. It did not have any legal effect. And since Prayer Tower, LLC, has not filed its own case, there is no Prayer Tower, LLC, bankruptcy, and there is no Prayer Tower, LLC, estate in which the property involved in the present motions might be included.[13]

### b. The Foreclosure Sale

Whether Prayer Tower, LLC, files its own bankruptcy case or not, its situation is the same as Woodlawn Gardens, LLC in regard to the foreclosure. The foreclosure sale of the property conducted on February 11, 2004, and the failure of Prayer Tower, LLC, to move from the property, or its failure to redeem any statutory right of redemption it might have had, eliminated any interest Prayer Tower, LLC, may have otherwise had in the property.

Consequently, as in the case with Woodlawn Gardens, LLC, the property subject to the pending motions is not, and cannot be, part of any bankruptcy estate of Prayer Tower, LLC. estate.

## B. The City Is Entitled to Relief from the Stay for Cause

The City's second request of this Court is for relief from the stay to continue with its state court litigation against the debtor. Section 362 of the Bankruptcy Code governs the resolution of that request.

---

[13] The Court initially raised this issue through a Show Cause Why Woodlawn Gardens, LLC, and/or Prayer Tower, LLC, Should Not be Dismissed under Section 302(a) of the Bankruptcy Code Because Corporations Cannot be Joint Debtors which was scheduled for hearing with the trial of the main motions. In response, counsel for Woodlawn Gardens indicated that he had been instructed by Rev. Hosea Agee, who signed the petition as the representative of Prayer Tower, LLC, and who was present in the courtroom, to inform the Court that Woodlawn Gardens, LLC, is indeed the only debtor in this bankruptcy case, and that Prayer Towers, LLC, is not, and should not be considered, a debtor.

Based on that representation, the Court must conclude that the apartment complex and related property, cannot be part of a bankruptcy estate of Prayer Tower, LLC, because Prayer Tower, LLC, has not commenced a bankruptcy case. Prayer Tower, LLC, should not, however, take that conclusion as a cue to institute a separate bankruptcy estate with the intent of obtaining another stay of the City's efforts to regain possession of the property. As discussed above, the foreclosure of the Woodlawn Gardens' interest foreclosed any interest Prayer Tower, LLC, might have had.

11

## 1. General Rule

A party is entitled to relief from the automatic stay pursuant to section 362(d)(1) of the Bankruptcy Code, "for cause, including the lack of adequate protection of an interest in property of such party ...." 11 U.S.C. § 362(d)(1).[14]

---

[14]Section 362(d) reads:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay--

    (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

    (2) with respect to a stay of an act against property under subsection (a) of this section, if--

        (A) the debtor does not have an equity in such property; and

        (B) such property is not necessary to an effective reorganization; or

    (3) with respect to a stay of an act against single asset real estate under subsection (a), by a creditor whose claim is secured by an interest in such real estate, unless, not later than the date that is 90 days after the entry of the order for relief (or such later date as the court may determine for cause by order entered within that 90-day period)--

        (A) the debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or

        (B) the debtor has commenced monthly payments to each creditor whose claim is secured by such real estate (other than a claim secured by a judgment lien or by an unmatured statutory lien), which payments are in an amount equal to interest at a current fair market rate on the value of the creditor's interest in the real estate.

11 U.S.C. § 362(d). While subsection 362(d)(3) addresses a single asset estate, its provisions do not apply here. The debtor has neither filed a plan under subsection (d)(3)(A) nor made payments under subsection (d)(3)(B). And although the pending case is a "single asset" case, this Court is not, "precluded from granting relief under section 362(d)(1) or (2) where it is

Case 05-04731-BGC11    Doc 43    Filed 06/13/05    Entered 06/13/05 15:55:53    Desc Main
Document      Page 12 of 17

## 2. Burdens of Proof

In a hearing of a motion for relief from an automatic stay, the party requesting relief has the burden of proof on the issue of the debtor's equity in the Property, while the debtor has the burden of proof on all other issues. 11 U.S.C. § 362(g).

## 3. Cause under Section 362(d)(1)

Relief from stay may be granted for "cause" under section 362(d)(1). Because the Code does not define that term, courts are left to determine whether cause exists for granting a relief from stay based on the totality of circumstances in each case. Baldino v. Wilson (In re Wilson), 116 F.3d 87, 90 (3rd Cir.1997); In re Brown, 290 B.R. 415, 423 (Bankr. M.D. Fla. 2003). Legislative history indicates that the "'facts of each request will determine whether relief is appropriate under the circumstances.'" In re Mazzeo, 167 F.3d 139, 142 (2nd Cir. 1999)(quoting H.R.Rep. No. 95-595, at 343-44 (1977), reprinted in 1978 U.S.C.C.A.N. 6300).

The Court should, "consider the policies underlying the Bankruptcy Code as well as the competing interests of the creditor, debtor, and other parties in interest" when exercising its discretion in granting a motion for relief for cause. In re Borbidge, 81 B.R. 332, 335 (Bankr. E.D. Pa. 1998). Thus, cause is an inherently broad and flexible concept, allowing the bankruptcy court to resolve matters based on the unique facts of each situation.

Based on the evidence, the Court finds that cause exists for allowing the City relief from the stay for the purpose of pursuing its state court action.

First, the property involved in the state court proceeding, that is the apartment complex which stood as collateral for the City's loans, does not belong to either Woodlawn Gardens, LLC, or Prayer Tower, LLC. It belongs to the City. Neither Woodlawn Gardens, LLC, nor Prayer Tower, LLC, have any lawful claim to it, or interest in it, whatsoever. Consequently, the bankruptcy stay has no application to it and their continued occupation and control of it, including the collection of rents, is wrongful.

Second, even if the property had not been lost to foreclosure and failure to timely vacate and redeem, neither Woodlawn Gardens, LLC, nor Prayer Tower, LLC, have made any payments on the property during the two and one-half years that have

---

appropriate to do so even where the 90 days of section 362(d)(3) have not run. 2 Lawrence P. King, Collier on Bankruptcy ¶ 362.07 at 362-74 (15th ed. 1996)." In re Duvar Apt., Inc., 205 B.R. 196, 200 (9th Cir. BAP 1996). See also In re Pacific Rim Investments, LLP, 243 B.R. 768, 772 (D. Colo. 2000) and In re 234-6 West 22nd St. Corp., 214 B.R. 751, 755 (Bankr. S.D.N.Y. 1997).

13

passed since Woodlawn Gardens formerly acquired the property. In addition, both Woodlawn Gardens, LLC, and Prayer Tower, LLC, have failed to maintain casualty insurance on the property.

Third, Prayer Tower, LLC, is not a debtor in any bankruptcy case. Consequently, as to Prayer Tower, LLC, the state court action is not stayed. There is no bankruptcy stay in place which constrains the City from proceeding against Prayer Tower.

Fourth, there is no reason that Woodlawn Gardens, LLC, or Prayer Tower, LLC, should not be required to account for their stewardships of the property involved in this case. And Woodlawn Gardens, LLC, which is the only one of those entities that is in bankruptcy, has not suggested any reason that it should not be required to render an accounting. Similarly, it has not suggested how requiring it to account would tend to frustrate or impede its reorganization efforts, especially when those efforts apparently center strictly on the operation of the apartment complex, a complex that it does not own and should soon be required to relinquish. In fact, such an accounting should be a matter of simply opening its books and records to the state court receiver and the City's attorneys, which should not, relatively speaking, represent any significant burden.

Fifth, the state court has an expertise far beyond this Court's to resolve the issues between the parties, including any defenses that the defendants in that case may wish to present. All issues strictly involve state law. They can be addressed and be resolved in the state court more expeditiously than in this Court.

Based on the above, the Court finds that cause exists under section 362(d)(1) to lift the stay to allow the City to continue with its state court litigation.

### C. There Is No Current Reason to Dismiss this Case

The City argues that Woodlawn Gardens, LLC, filed its reorganization case in bad faith and that the case should therefore be dismissed. While this Court recognizes that the operation of the apartment complex may be Woodlawn Gardens, LLC's only business function, and that this Order will effectively terminate that function, the Court cannot assume that the pending case may not serve another function.

In regard to the City, all of its objectives will be met. The City sought: (1) to obtain a declaration that the apartment complex is not property of the bankruptcy estate; (2) to obtain relief from the stay so that its state court action can continue; (3) to obtain control of the property and rents from Woodlawn Gardens, LLC, and Prayer Tower, LLC; and (4) to obtain an accounting of the LLC's activities. All of those objectives will be met upon entry of this Order.

Consequently, because the debtor may have other interests that would benefit from a reorganization, and because the City has received all that it requested, excluding dismissal, the Court finds that dismissal now is not warranted.[15]

## V. ORDER

Based on the above, it is **ORDERED, ADJUDGED, and DECREED**:

1. The <u>Motion of City of Birmingham to Dismiss, or in the Alternative, for Relief From the Automatic Stay</u> is **GRANTED** as to the relief from stay but **DENIED** as to dismissal:

2. The <u>Motion of City of Birmingham for Emergency Hearing on its Motion for an Order Deeming Certain Property to be Excluded From Debtor's Estate and Additionally or Alternatively, for Relief From the Automatic</u> is **GRANTED** as to relief from the stay and **GRANTED** to the extent that the disputed property is deemed excluded from the estate;

3. The apartment complex generally known as the Woodlawn Gardens Project and its associated property, including leases, rents, personalty, and other common items, (which are the subject of the City's motions) belong to the City of Birmingham. Neither Woodlawn Gardens, LLC, nor Prayer Tower, LLC, has any right, title or interest whatsoever in that property. And that property is not part of any bankruptcy estate.

4. The automatic stay is not applicable to the apartment complex and associated property and does not act to constrain or prevent the City's acts to obtain possession and control of that property;

5. There is no stay applicable to, and none to impede, the continued prosecution of the City's state court action against Woodlawn Gardens, LLC, or any other act or action against that entity which may now be pending or may hereafter be commenced.

6. Prayer Tower, LLC, is not a debtor in any bankruptcy case and has not commenced a bankruptcy case. There is no stay applicable to, and none to impede, the continued prosecution of the City's state court action against Prayer Tower, LLC, or any other act or action against that entity which may now be pending or may hereafter be commenced.

---

[15]The Court has not directly considered the City's argument that the current case was filed in bad faith.

Case 05-04731-BGC11    Doc 43    Filed 06/13/05    Entered 06/13/05 15:55:53    Desc Main
Document    Page 15 of 17

7. Relief from the automatic stay is granted for the City to employ such lawful measures as may be necessary to obtain possession and control of the apartment complex generally known as the Woodlawn Gardens Project and associated property, and to employ such additional state court remedies or procedures as may be necessary to realize, accomplish, or obtain in full such relief as may be granted by the state court.

8. Eight additional matters were set before the Court on the morning of the trial. The dispositions of those matters is in accordance with the discussion in note 3 above. Those are:

    A. The Motion of City of Birmingham for Expedited Hearing on Its Motion to Dismiss, or in the Alternative, for Relief From the Automatic Stay filed May 13, 2005, is **GRANTED**;

    B. The Emergency Motion of City of Birmingham for an Order Deeming Certain Property to be Excluded From Debtor's Estate and Additionally or Alternatively, for Relief From the Automatic Stay filed May 17, 2005, is **GRANTED**;

    C. The Show Cause Why this Case Should Not be Dismissed because the Debtor/Corporation is not Represented by a Licensed Attorney is **MOOT**;

    D. The Show Cause Why Woodlawn Gardens, LLC, and/or Prayer Tower, LLC, Should Not be Dismissed under Section 302(a) of the Bankruptcy Code Because Corporations Cannot be Joint Debtors is **MOOT**;

    E. The Show Cause Why this Case Should Not be Dismissed for Failure to File Proper Schedules will be addressed by a separate order;

    F. The Motion for Delay was **GRANTED** by this Court's May 26, 2005 order;

    G. The Motion to Set Aside is **DENIED**;

    H. The debtor's Notice of Appearance and Debtor Objections to the Pending Motions as Filed by the City of Birmingham are **OVERRULED** as to the objections;

9. **This Court's order of May 26, 2005, Proceeding No. 32, shall remain in effect until the state court affirms it or rules otherwise;**

10. This order is a written opinion for purposes of the E-Government Act, Pub. L. No. 107-347.

Dated: June 13, 2005 /s/Benjamin Cohen
BENJAMIN COHEN
United States Bankruptcy Judge

BC:sm
cc: Mr. Matthew W. Grill
 Mr. Brian Bugge
 Clerk of the Circuit Court of Jefferson County, Alabama
  in Case No. 2005-2291-HSL